# STATE OF OREGON,
*Respondent,*

*v.*

# LARRY V. ABRAHAM,
*Appellant.*

(89-07-4651-C; CA A62963)

811 P2d 658

Sally L. Avera, Public Defender, Salem, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals his convictions for sexual abuse in the first degree. ORS 163.425. He argues that the trial court erred by allowing one witness to comment on the credibility of another witness. We affirm.

On direct examination, Detective Trapp testified that he had extensive experience and training in the investigation of sexual offenses. He explained that, in conducting an interview with a child thought to be a victim of sexual abuse, it is important not to ask leading questions that suggest a particular answer. On cross-examination, defense counsel questioned Trapp:

"Q  You indicated that during the interview process, that if — that you have to be careful not to suggest to the person you're interviewing what — what the answer is that you would like; isn't that correct?

"A  That's correct.

"Q  And isn't that to avoid contaminating the child; isn't that the word that's used?

"A  Yes.

"Q  What does contamination mean in this — that setting?

"A  To place a thought or an answer into a child's mind which normally would not have been there.

"Q  In other words, isn't it correct that in a case like this it's very easy to — for the — for the child to guess what the answer — that the adult wants, and then give them that answer?

"A  It depends on the child and the — and the interviewer, I guess.

"Q  But isn't that the danger that you're guarding against?

"A  Yes. That's why we conduct the interview in that — in that manner.

"Q  Isn't it correct that if — if a child is contaminated in that fashion, that they [sic] will give false information about an alleged abuse?

"A  No.

"Q  No?

"A   No, they're — children are much like any other person under any other circumstances. There are some children that would, if they were led down a particular road; there are some children that could not be led — they know what's wrong and they'll tell you so.

"Q   Do you know how many interviews [the victim] had been through prior to the time that you sat in on the interview?

"A   I don't believe that there was a formal interview prior to mine.

"Q   Isn't it correct that she had discussed it with members of her family and minister before you were involved?

"A   Yes, that's true.

"Q   *Do you know, or have any way of knowing, to what extent information may have been suggested to [her] prior to your interview?*

"[THE PROSECUTOR]:   Your Honor, I'm going to object to that question unless he can answer from his personal knowledge, and I don't think that's possible.

"[DEFENSE COUNSEL]:   My question whether — question is whether he has any way of knowing.

"THE COURT:   Again, knowing what?

"[DEFENSE COUNSEL]:   My — my question is whether he has any way of knowing whether or not answers had been suggested to — or information suggested to [the victim] prior to his interview.

"THE COURT:   Okay, and your objection is what? It dropped off at the last.

"[THE PROSECUTOR]:   Well, if he's going to confine it that way, in that phrasing, I — I'll withdraw it.

"THE COURT:   All right. Go ahead.

"(CONTINUED CROSS EXAMINATION BY [DEFENSE COUNSEL])

"A   I'm still a little confused here, also. But I was not present, and I had not met [her] prior to my interview, which was the 11th of — July, 1989, *so I had no way of knowing.*

"Q   So you don't know what went on with her prior to that time; is that correct?

"A   Only the information she gave me in the interview that day." (Emphasis supplied.)

On redirect examination, the prosecutor asked:

"[PROSECUTOR]: And as a result of that interview and your past experiences interviewing children, *were you able to form an opinion as to whether she had been, in fact, contaminated by some other person?*

"[DEFENSE COUNSEL]: Objection, Your Honor. *That's an improper question. It's beyond his scope of expertise.*

"* * * * *

"THE COURT: I'll overrule. If you have any information, then *go ahead and answer the question.*

"DET. TRAPP: There was no doubt in my mind that this child was giving us truthful, accurate . . .

"* * * * *

"[DEFENSE COUNSEL]: That's exactly the reason for our objection.

"THE COURT: I'll strike. That isn't the question that you were asked.

"* * * * *

"DET. TRAPP: She had not been." (Emphasis supplied.)

Immediately, defendant moved for a mistrial, which was denied.

■ ■ Defendant argues that the prosecutor's question about contamination sought an answer that was an impermissible comment on the victim's credibility and asserts that the court's denial of his motion for mistrial was an abuse of discretion. The state contends that defendant "opened the door" when he cross-examined Trapp as to whether the child's testimony had been contaminated. It also argues that there is no suggestion that the prosecutor was guilty of deliberate misconduct and that the trial court's corrective action prevented any prejudice. Defendant objected to the prosecutor's question on the basis that it asked for an answer that was "beyond [Trapp's] scope of expertise." His claim of error based on the proposition that one witness may not comment on the credibility of another witness was not preserved in the trial court.[1]

---

[1] The trial court may have had an obligation, *sua sponte,* not to allow testimony

■ We are also not persuaded that the trial court abused its discretion when it denied defendant's motion for a mistrial. Trapp's unresponsive answer was promptly stricken. Defendant had cross-examined on the subject matter and there is no suggestion that the prosecutor was guilty of intentional misconduct. Defendant did not request a curative instruction. The trial judge was in the best position to assess potential prejudice. *See State v. Montez,* 309 Or 564, 595, 789 P2d 1352 (1990); *State v. Farrar,* 309 Or 132, 164, 786 P2d 161 (1990). There was no abuse of discretion.

Affirmed.

---

that permitted a witness to comment on another witness' credibility. *See State v. Milbradt,* 305 Or 621, 630, 756 P2d 620 (1988); *State v. McQuisten,* 97 Or App 517, 520, 776 P2d 1304 (1989). Defendant does not raise that argument. We do not suggest that the question asked by the prosecutor was proper. We hold only that defendant's claim of error was not preserved.