Argued and submitted February 21, reversed and remanded August 14, 2013, petition for review denied January 16, 2014 (354 Or 700)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

PATRICK GARY HIGGINS,
aka Elmer Douglas Chobo,
*Defendant-Appellant.*

Deschutes County Circuit Court
10FE0011AB; A145077

308 P3d 352

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pat Higgins filed the supplemental brief *pro se.*

Rolf C. Moan, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals from judgments of conviction for unlawful sexual penetration, sodomy, and rape. Although defendant assigns numerous errors to the trial court, we address only whether the trial court's failure to *sua sponte* refuse to permit the complainant's mother to comment on the complainant's credibility was an error requiring reversal. We hold that the error is plain and requires that we reverse defendant's convictions and remand for a new trial.

Defendant began dating the complainant's mother, Eagles, in August 2008. In January 2009, defendant traveled with the complainant by train from Modesto, California, to Bend, Oregon. After arriving in Bend, defendant rented a motel room with one queen-sized bed. During the night, defendant removed the complainant's clothes and engaged in sexual intercourse with the complainant, even though she continually said "no."

In the weeks following the incident, the complainant became angry and upset. Eventually she began cutting herself and skipping school. Two to three weeks after the trip, the complainant gave her mother a letter attempting to explain what had happened. When Eagles spoke to the complainant, the complainant explained that defendant had "forced" himself on her at the motel the night they had arrived in Bend.

At trial, in response to the prosecutor's question, "[w]hat did [the complainant] tell you," Eagles stated:

> "She told me that he forced himself on her, and I'm like, 'Okay, well, how far did things go?' and she told me that it went all the way. *And I waited like so many hours and let her repeat it to me again that way I knew for sure she wasn't lying.*"

(Emphasis added.) Following the trial, defendant was found guilty on all counts.

Defendant argues that Eagles's comment, "And I waited like so many hours and let her repeat it to me again so that way I knew for sure she [the complainant] wasn't

lying," was an impermissible comment on the complainant's credibility that this court should address as plain error.[1] The state has two arguments in response. First, the state argues that Eagles's comment does not qualify for plain error review because defendant may have failed to object to the comment at trial for strategic reasons. Second, the state argues that, even if Eagles's response to the prosecutor's question was an impermissible comment on the complainant's credibility, at most defendant would only have been entitled to a cautionary jury instruction and not a mistrial. Therefore, this court should, in its exercise of discretion, decline to review the error.

The decision of an appellate court to review "unpreserved or unraised error" is "made with utmost caution." *State v. Fults*, 343 Or 515, 522, 173 P3d 822 (2007). We may consider, under ORAP 5.45(a), unpreserved issues if the error (1) is one of law; (2) is "apparent," in that the "legal point is obvious, not reasonably in dispute"; and (3) appears "on the face of the record," such that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Additionally, we analyze such errors based on "the law existing at the time the appeal is decided" and not when the error occurred. *State v. Jury*, 185 Or App 132, 136-37, 57 P3d 970 (2002). When a plain error is established, we still must determine if it is appropriate to exercise our discretion to correct the error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991).

Under Oregon law, "a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983). The Supreme Court eliminated any question in that regard when that court stated emphatically, "We have said before, and we will say it again, but this time with emphasis—we really mean it ***. The assessment of credibility is for the trier of fact[.]" *State v. Milbradt*, 305 Or

---

[1] ORAP 5.45(1) prohibits review on appeal any error "unless the claim of error was preserved in the lower court ***, provided that the appellate court may consider an error of law apparent on the record."

621, 629-30, 756 P2d 620 (1988) (discussing psychotherapist opinion and suggesting a trial court, *"sua sponte,* should summarily cut off the inquiry before a jury is contaminated" by impermissible testimony). In light of *Milbradt,* this court has held that the trial court has a duty, *sua sponte,* to prevent testimony that is a comment on a witness's credibility. *State v. McQuisten,* 97 Or App 517, 520, 776 P2d 1304 (1989); *see also B. A. v. Webb,* 253 Or App 1, 12, 289 P3d 300 (2012) ("It is legally impermissible under Oregon law for a witness to comment on the credibility of another witness, and, in enforcing that principle, trial courts are obligated, *sua sponte,* to exclude and, if necessary, strike testimony that comments on a witness's credibility."). Witness testimony regarding the veracity of another witness "invade[s] the jury's role as the sole judge of the credibility of another witness." *State v. Charboneau,* 323 Or 38, 47, 913 P2d 308; *see State v. Keller,* 315 Or 273, 286, 844 P2d 195 (1993) (rule applies to testimony regarding another witness's trial testimony and prior statements).

The rule is "straightforward" in instances where "one witness states directly that he or she believes another witness, or that the other witness is honest or truthful. However, statements that fall short of such overt vouching also may be impermissible." *State v. Lupoli,* 348 Or 346, 357, 234 P3d 117 (2010); *see State v. Lowell,* 249 Or App 364, 368, 277 P3d 588, *rev den,* 352 Or 378 (2012) (plain error to admit detective's testimony that he "didn't think that [the defendant] was being very honest" during his interview); *State v. Ferguson,* 247 Or App 747, 752-53, 271 P3d 150 (2012) (statement that witness would not have called police if he had not believed the complainant was impermissible).

In this instance, Eagles's testimony that she waited "for so many hours" so she "knew for sure that [the complainant] wasn't lying" was a direct comment that her daughter was truthful and that she believed her daughter's accusations against defendant.

The state argues, however, that the admission of Eagles's testimony does not qualify for plain error review because this court would have to choose between competing inferences, one of which is that defendant may have chosen

not to object for strategic reasons. *See State v. Gornick*, 340 Or 160, 169-70, 130 P3d 780 (2006) (plain error cannot be found if the record indicates a "competing inference," including the defendant's strategic purpose). The state asserts that anytime a defendant fails to object to comments on credibility, competing inferences are automatically created, disqualifying the issue from plain error review. However, in *State v. Lovern*, 234 Or App 502, 512, 228 P3d 688 (2010), this court stated that "competing inferences," for purposes of plain error analysis, do not arise automatically, but must be plausible. *See Lowell*, 249 Or App at 368-70 (failure to object for strategic purposes was not a plausible inference). The state emphasizes that here the mother "*volunteered* the comment," (emphasis in original), in support of its argument that failure to object was a defense strategy—the defendant might not have wanted to cause the jury to "dwell on the comment." The state's speculation aside, there is nothing in the record indicating that defendant made any kind of strategic choice not to object—and we are particularly reluctant to draw that inference in a case that rests almost entirely on the complainant's testimony. In sum, we agree with defendant that admission of Eagles's comment on the complainant's credibility constitutes plain error.

In determining whether to exercise our discretion to correct the error, we generally consider the following factors:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]"

*Ailes*, 312 Or at 382 n 6.

The state argues that we should decline to correct the error because one of the factors we must consider is "whether the record would have developed differently if the appellant had raised" the error at trial. *See State v. R. H.*, 237 Or App 245, 252, 239 P3d 505, *rev den*, 349 Or 480 (2010) (declining to exercise discretion for the court's jurisdiction determination in a juvenile dependency matter). In that regard the state contends that reversal would provide a

greater benefit to defendant because a curative jury instruction would have been appropriate had defendant objected at trial. *See Brown,* 310 Or at 364-65 (relying on *Milbradt* to conclude that a curative instruction to disregard an officer's testimony was sufficient remedy). We reject that argument.

The fact that a curative instruction *may* be "sufficient to dispel the jury's possible contamination," *Brown,* 310 Or at 365, from impermissible testimony does not lead to the conclusion that it *is* sufficient in all instances. In this case, the question for the jury was whether defendant had committed the acts of unlawful sexual penetration, sodomy, and rape by means of forcible compulsion as claimed by the complainant or whether the acts were consensual as defendant claimed to the police. Because there was no physical evidence or other evidence indicating that defendant had used force, the state's claim in that regard rested solely on the complainant's credibility.

We stated in *Lowell* that, in "a case that boil[s] down, in large part, to a credibility contest between the victim and defendant, evidence commenting on the credibility of either was likely to be harmful." 249 Or App at 370; *see also State v. Hollywood,* 250 Or App 675, 680, 282 P3d 944 (2012) (the complainant's credibility was "at the heart of the state's case," without any physical evidence of abuse). A sexual assault case with no physical evidence requires that the jury focus almost exclusively on the credibility of the complainant. Here, the witness who commented on the complainant's credibility was the complainant's parent, privy to the complainant's behaviors, characteristics, and past experiences. That fact significantly increases the risk that the jury's credibility determination was affected by Eagles's comments.

Under defendant's theory of the case, his sexual contact with the complainant was unlawful, but was not forcible—resulting at most in convictions for Class C felonies—not Class A felonies as contended by the state. As noted, the issue of force turned solely on the complainant's testimony. Viewed in that light, we conclude that the gravity of the error and the ends of justice require that we exercise

our discretion to correct the error, reverse defendant's convictions, and remand for a new trial.

Reversed and remanded.